Eastern District of Kentucky
FILED
NOV 21 2005
AT COVINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT COVINGTON

CIVIL ACTION NO. 2005-84

RUTH BURLESON                                                PLAINTIFF

VS.

**MEMORANDUM OPINION AND ORDER**

JO ANNE BARNHART
COMMISSIONER OF SOCIAL SECURITY                              DEFENDANT

This matter is before the court on the motion for summary judgment of the plaintiff (Doc. 7) and the cross-motion for summary judgment of the defendant (Doc. 8).

In reviewing the decision of the ALJ in Social Security cases, the only issue before the court is whether the decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. Even if the evidence could also support another conclusion, the decision of the ALJ must stand if the evidence could reasonably support the conclusion reached." Alexander v. Apfel, 17 Fed. Appx. 298, No. 00-5710 (6th Cir. 2001)(citing Buxton v. Halter, 246 F.3d 762, 772-73 (6th Cir. Aug. 16, 2001)).

In order to qualify for disability benefits, a claimant must establish that she is disabled within the meaning of the Social

1

Security Act. 42 U.S.C. § 423(a)(1)(D). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(2)(A).

The Social Security Act requires the Commissioner to follow a five-step process when making a determination on a claim of disability. Heston v. Commissioner of Social Security, 245 F.3d 528 (6th Cir. 2001). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity." Heston, 245 F.3d at 534 (citing Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990)( citing 20 C.F.R. § 404.1520(b)). Second, if the claimant is not engaged in substantial gainful activity, she must demonstrate she suffers from a severe impairment. Id. "A 'severe impairment' is one which 'significantly limits . . . physical or mental ability to do basic work activities.'" Id. (citing 20 C.F.R. §§ 404.1520(c) and 416.920(c)). Third, if claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets or equals a listed impairment at 20 C.F.R. part 404, subpart P, appendix 1, then claimant is presumed disabled regardless of age, education or work experience. Id. (citing 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000)). Fourth, claimant is not disabled if her impairment(s) does not prevent her from doing her past relevant

2

work. Id. Lastly, even if the claimant cannot perform her past relevant work, she is not disabled if she can perform other work which exists in the national economy. Id. (citing Abbott, 905 F.2d at 923).

The claimant has the burden of establishing that she is disabled, but the Commissioner bears the burden of establishing that the claimant can perform other work existing in the national economy.

At the time of the hearing, the claimant was forty-seven years old. Claimant graduated from high school and has past relevant work as a receptionist, medical assistant, cashier and billing clerk. Claimant had back surgery at the L5-S1 levels in January, 2001. The claimant recovered from surgery and returned to work. The claimant claims she became disabled on September 18, 2002 as a result of neck and back pain and panic attacks.

At the hearing on this application, the ALJ heard testimony from the claimant, a medical consultant, and a vocational expert. Upon hearing the testimony and reviewing the record, the ALJ performed the requisite 5 step evaluation for determining disability.

At step one, the ALJ determined that claimant had not been engaged in substantial gainful activity since the alleged onset of disability. At step 2, the ALJ determined that the "claimant has degenerative disc disease and is status post lumbar back surgery in 2001. She also has anxiety, depression and panic attacks, all 'severe' impairments."

At step 3, the ALJ found that although claimant has severe impairments, she does not have an impairment or combination thereof that is listed in or equal to one listed at 20 C.F.R. part 404, subpart P, appendix 1.

At step 4, the ALJ found the claimant is able to perform her past relevant work as a medical receptionist. Although the ALJ could have ended her analysis after finding claimant was able to perform her past relevant work, she went on to step 5 to show there were other jobs available to the claimant.

At step 5, the ALJ found that the claimant is capable of performing other work which exists in significant numbers in the national economy at the sedentary level, including general office clerk. Accordingly, the ALJ found the claimant not disabled.

The claimant argues that the ALJ erred in not giving appropriate weight to the medical opinion of her treating physician Dr. Shearer. The regulations provide that a treating physician's opinion will not be given controlling weight unless it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §404.1527(d)(2). If an ALJ does not find a treating source's opinion to be entirely credible, the ALJ may reject it, provided that good reasons are specified. Bogle v. Sullivan, 998 F.2d 342 (6th Cir. 1993).

In the case at bar, the ALJ stated:

> [I]n regard to the claimant's physical limitations, Dr. Shearer's assessment is not supported by objective medical findings. The undersigned notes that the claimant underwent lumbar surgery in January 2001 and an MRI of the cervical spine in 2002 showed some degenerative discogenic disease.

4

> However, an EMG/NCV, taken July 16, 2003, showed no convincing evidence of radiculopathy, plexopathy, or peripheral neuropathy of the left upper extremity or bilateral lower extremities (Exhibit 11F, p. 3). A recent MRI of the lumbar spine, taken on September 25, 2003, showed only 'mild' post laminectomy syndrome and diffuse minimal bulging at L4-5 (Exhibit 11F, p. 14). Also Dr. Fritzhand's consultative report, Dated December 11, 2002, noted no evidence of nerve root damage. She had brisk deep tendon reflexes, no evidence of muscle atrophy or paravertabral muscle spasm, and well-preserved bilateral grasp strength and manipulative ability (Exhibit 5F, pp. 3-4).
>
> . . .
>
> The claimant's attorney argues that Dr. Shearer's assessment (a treating doctor), dated June 9, 2004, should be given controlling weight pursuant to Social security Ruling 96-2p. Dr. Shearer is a family doctor only. In his assessment, he provides no explanation or findings to support the severe limitations he sets forth. There is no mention of objective tests, findings on examination to support his restrictions. In fact, Dr. Shearer found reaching, handling, fingering, and feeling limitations, but there is no significant upper extremity problem to result in these limitations. The EMG/NCV showed no evidence of radiculopathy, plexopathy, or peripheral neuropathy of the left upper extremity or bilateral lower extremities (Exhibit 11F, p. 3). Dr. Fritzhand found normal grasp strength bilaterally. In Exhibit 11F there were some positive Waddell's signs and some decreased sensation in nondermatomal pattern. Dr. Shearer also noted that the claimant must work in a clean air environment, but there is no evidence of respiratory problems and the claimant continues to smoke (Exhibit 12F and testimony). Accordingly, little weight was given to Dr. Shearer's assessment and more weight is given to the medical expert's opinion, Dr. Lorber who is an orthopedic doctor. Although less restrictive, the state doctors also were of the opinion the claimant had some capacity to work.

(AR pp. 25, 27).

The court finds that the ALJ extensively analyzed the records and determined Dr. Shearer's credibility by looking at the objective medical records. The ALJ found the medical assessment from Dr. Shearer was inconsistent with the medical evidence in the record. The Court finds that the ALJ provided

5

sufficient reasons for discrediting Dr. Shearer's assessment and that substantial evidence supports the ALJ's reliance on the consulting physicians' reports.

The claimant argues that the ALJ was required to adopt the opinion of Dr. Shearer because Dr. Lorber stated that his residual functional capacity was not that much different from Dr. Shearer's. This, however, has not Dr. Lorber's testimony. Instead, Dr. Lorber stated that Dr. Shearer's "conclusions" are not all that different from his own, but he found Dr. Shearer's RFC was unnecessarily restrictive. Both doctors agree that the claimant has degenerative lumbar disease and degenerative cervical spondylosis. Dr. Lorber agreed that the claimant does have significant restrictions on her residual functional capacity, but he does not believe the medical evidence supports a finding of total disability. Instead, he found that the medical evidence supported a finding that she could perform at a sedentary level with a sit/stand option.

The claimant also argues that Dr. Lorber incorrectly stated that there was no evidence that anyone ever asserted she had radiculopathy. Claimant points to Dr. Shearer's note of September 3, 2002 in which Dr. Shearer notes his assessment of left radiculopathy of the left arm. The court finds that the fact Dr. Lorber did not recall this entry in Dr. Shearer's medical notes does not discredit Dr. Lorber's ultimate findings. Specifically, Dr. Lorber explained in his testimony that no objective medical testing demonstrated radiculopathy. In

6

response to the claimant's inquiry as to why she was told by Dr. Mullin's nurse that she had radiculopathy, Dr. Lorber told her there was no notation in Dr. Simmon's records of radiculopathy, and that based on his findings he didn't know why somebody would tell her otherwise. He then went on to say that there was no evidence in the record of anyone asserting that she had radiculopathy. (AR p. 321-22).

The court finds Dr. Lorber's misstatement is harmless error because it is clear that his testimony is that there was no objective evidence to support a finding of radiculopathy. Furthermore, as explained above, the ALJ discredited Dr. Shearer's findings. Thus, there is no evidence that had Dr. Lorber recalled Dr. Shearer's assessment of radiculopathy in one office note that the ALJ's findings in this matter would have been different.

The claimant also contends that the ALJ erred in relying on Dr. Lorber's testimony because he stated that his testimony was based only on the objective medical evidence when a claimant is entitled to rely on objective findings as well as subjective evidence to prove disability. The only case cited by the claimant, however, is not inconsistent from the ALJ's determination in the case at bar. See Cohen v. Secretary of Department of Health and Human Services, 964 F.2d 524 (6th Cir. 1992).

In Cohen, the court found that a claimant is entitled to rely in part on her own testimony in combination with the

7

objective medical evidence to establish that she is disabled. Id. at 529. An ALJ, however, is responsible for determining the claimant's credibility with respect to her assertions and the ALJ's credibility determinations are entitled to great weight. Id.

In the case at bar, the ALJ considered the testimony of Dr. Lorber as to what the objective medical evidence demonstrated. In explaining his findings, Dr. Lorber stated that claimant had surgery in 2001 and had a subsequent complaint of recurrent pain. He then explained the medical testing subsequently performed after her complaints of pain and notes that none of the tests demonstrated radiculopathy.

Furthermore, the ALJ specifically considered claimant's subjective complaints and the objective medical evidence and determined that her allegations were not wholly credible. The court finds the ALJ considered both the objective and subjective evidence in making her disability determination.

The claimant further argues that the ALJ erred in not finding her panic attacks disabling. The claimant does not refer the court to any medical evidence that supports her assertion that the attacks are disabling. To the contrary, the medical evidence supports the ALJ's finding that claimant's mental impairments are not disabling.

The ALJ referred to Dr. Little's December 5, 2002 consultative examination of plaintiff. In that examination, the claimant reported that she had never received psychiatric

8

treatment, but had been taking Ativan to help with her panic attacks. Dr. Little concluded that the claimant had some mild problems with attention, concentration and short-term memory during the examination. She related adequately and she appeared to be capable of relating in a socially positive manner. He found that the claimant's prognosis was considered good if she received psychotherapy.

In addition, the ALJ found that the claimant's one time visit to NorthKey Community Care also did not support a finding of a disabling mental impairment. The NorthKey assessment included a relatively normal mental status exam, finding the claimant was friendly and cooperative, alert, attentive and focused, demonstrated appropriate affect, memory intact, average intellectual functioning and clear, coherent and relevant speech and thought.

The ALJ noted claimant's claim of frequent panic attacks, lasting 1-2 minutes and requiring 15-20 minutes to recover. The ALJ found that claimant's lack of treatment, Dr. Little's assessment of only mild limitations in social and occupational functioning, an unremarkable mental status examination at NorthKey did not demonstrate a debilitating mental impairment. Accordingly, the ALJ found after a review of the evidence that the claimant had only mild restrictions of daily activities, mild difficulty maintaining social functioning, and mild difficulty maintaining concentration, persistence, or pace. The court finds that the ALJ's finding with regard to claimant's mental

9

impairment is supported by substantial evidence.

The claimant also argues that the ALJ erred in evaluating her pain. Pain alone, if the result of a medical impairment, may be severe enough to constitute disability. Kirk v. Secretary of H.H.S., 667 F.2d 524, 538 (6th Cir. 1981), cert. denied, 461 U.S. 957 (1983). In order to find the claimant disabled on the basis of pain alone, the Commissioner must first determine whether there is objective medical evidence of an underlying medical condition. If there is, the Commissioner must then determine: (1) whether the objective medical evidence confirms the severity of pain alleged by the claimant; or (2) whether the underlying medical impairment is severe enough that it can reasonably be expected to produce the allegedly disabling pain. Duncan v. Secretary of H.H.S., 801 F.2d 847, 852-53 (6th Cir. 1986). See also Felisky v. Bowen, 35 F.3d 1027, 1038-39 (6th Cir. 1994); Jones v. Secretary of H.H.S., 945 F.2d 1365, 1369 (6th Cir. 1991).

This test, however, "does not require . . . 'objective evidence of the pain itself.'" Duncan, 801 F.2d at 853. Where a complaint of pain is not fully supported by objective medical findings, the Commissioner should consider the frequency and duration of pain, as well as other precipitating factors including the effect of the pain upon plaintiff's activities, the effect of plaintiff's medications and other treatments for pain, and the recorded observations of pain by plaintiff's physicians. Felisky, 35 F.3d at 1039-40.

In the case at bar, the ALJ found that the objective medical evidence did not support claimant's complaints of disabling pain. The ALJ stated:

> The claimant testified that she has chronic back and neck pain that radiates to her left arm and a burning sensation in her left leg. She testified that she is only able to sit, stand and/or walk 20 minutes at a time. She stated that she has difficulty reaching due to neck pain and that she has clawing of her fingers. If she does anything, her pain reportedly increases. She testified that her back pain is worse since surgery and that she has constant burning in her left leg. . . . However, contrary to claimant's allegations, an EMG/NCV, taken July 16, 2003, showed no convincing evidence of radiculopathy, plexopathy, or peripheral neuropathy of the left upper extremity or bilateral lower extremities (Exhibit 11F, p. 3). A recent MRI of the lumbar spine, taken on September 25, 2003, showed only mild post laminectomy syndrome and minimal bulging at L4-5 (Exhibit 5F, pp. 3-4). She does not have ongoing neurologic deficits oftentimes seen with significant pain.
>
> . . .
>
> In regard to the claimant's activities of daily living, the claimant testified that she does not do much housework. She watches 1 ½ hours of television and naps daily for 1 ½ hours. She testified that she rarely goes out socially and does not regularly drive. Her daughters often help her with the household chores. She testified that her medications do not help much and that they make her tired.
>
> Based on the objective physical and mental medical evidence summarized above, and including testimony of Dr. Lorber, the undersigned finds the claimant's allegations, as set forth in the record, are less than wholly credible.

The court finds that the ALJ performed the requisite pain analysis, stated sufficient reasons for discrediting claimant's subjective complaints of pain and finding that claimant's pain was not so severe to constitute a disability. See Walters v. Commissioner of Social Security, 127 F.3d 525, 532 (6th Cir. 1997). In addition, despite claimant's claim that the ALJ did not consider the fact her medication makes her drowsy, the court

11

finds the ALJ specifically mentioned claimant's claim of drowsiness, but found her allegations not fully credible.

As discussed above, "the findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. Even if the evidence could also support another conclusion, the decision of the ALJ must stand if the evidence could reasonably support the conclusion reached." Alexander v. Apfel, 2001 WL 966284 (6th Cir. 2001) (citing Buxton v. Halter, 246 F.3d 762, 772-73 (6th Cir. 2001)).

Lastly, the claimant contends that the ALJ committed several vocational errors. First, claimant alleges the ALJ erred by failing to ask an accurate hypothetical question of the vocational expert. Specifically, the claimant asserts that the ALJ should have incorporated into the hypothetical questioning claimant's limitations on reaching, handling, and fingering, the drowsiness caused by her medications and her panic attacks.

In the Sixth Circuit, it is well established that a hypothetical must accurately portray the claimant's limitations, but the ALJ is only required to incorporate those limitations that she has accepted as credible. Mcilroy v. Commissioner of Social Security, 2002 WL 1809089 (6th Cir. 2002) (unpublished); Varley v. Secretary of Health and Human Services, 820 F.2d 777, 779 (6th Cir. 1987).

12

The claimant's claim that the ALJ failed to accurately portray her limitations on reaching, handling, and fingering is without merit. In structuring her first hypothetical question, the ALJ told the vocational expert (VE) to assume an individual of the claimant's age, education, and work experience and the limitations stated in exhibits 8F and 9F. Exhibit 9F is a physical residual functional capacity assessment performed by a consulting physician. In this assessment, the reviewer checked the box for limited upper extremities under push and/or pull and found the claimant was limited in reaching in all directions. This reviewer did not find the claimant was limited in handling or fingering. Given the limitations posed in Exhibit 8F and 9F, the VE testified that the claimant could perform her past relevant work as a medical receptionist or billing clerk.

In a different hypothetical question, the ALJ asked the ALJ to consider Dr. Shearer's assessment including the limitations in handling, fingering and feeling. The VE opined that such limitations, in addition to the other limitations Dr. Shearer imposed, would preclude employment. The ALJ considered this testimony in reaching her decision with respect to claimant's RFC, and found these limitations were not an accurate portrayal of what the claimant was capable of doing. The ALJ specifically noted in her decision that she found Dr. Shearer's assessment on claimant's limitations in reaching, handling, fingering and feeling to be not well supported. (AR 27). Specifically, she stated that claimant had no significant upper extremity problem

that would result in such limitations. Accordingly, although the ALJ incorporated these limitations into a hypothetical question, she was not bound to accept the VE's opinion with respect to these limitations because she did not find them to be an accurate assessment of the claimant's RFC. The court finds the ALJ accurately incorporated the manipulative limitations she found credible into her hypothetical questioning and that substantial evidence supports her RFC finding.

Similarly, the court finds that the ALJ did not ignore claimant's claim of panic attacks. The VE specifically opined that if the ALJ found the claimant's assertions regarding her panic attacks to be credible, that the attacks would preclude employment. Thus, the panic attacks were included in hypothetical questioning.

The ALJ considered this evidence and found claimant's attacks were not severe enough to preclude employment. The ALJ stated:

> In regard to the claimant's mental limitations, the undersigned note that the claimant had never received any inpatient or outpatient psychiatric treatment. The claimant alleges frequent panic attacks that are not much better on medications. During what appears to be a one time visit at NorthKey, her mental status examination was essentially unremarkable. The claimant's counselor noted that the claimant's appearance was normal. She was friendly and cooperative. She was alert, attentive and focused. Her mood was depressed and anxious, but affect full and appropriate. Her psychomotor activity was slowed, but she was oriented to person, place, and time. Her judgment and insight were normal. Her memory was intact. Concentration was not significantly abnormal. Her speech was clear, coherent, and relevant. There was no evidence of perceptual disturbance or psychotic symptoms (Exhibit 13F). Thus, the undersigned finds that, in regard to the "B" criteria of mental functional limitations, the claimant has mild restrictions

14

of daily activities, mild difficulty maintaining social functioning, mild difficulty maintaining concentration, persistence, or pace, and there have been no episodes of decompensation.

. . . [The claimant] has only mild mental functional limitations as set forth in Exhibit 8F.

The ALJ also did not find the claimant's assertion that her medications make her drowsy to be of such a degree to impact her RFC. There is no evidence in the medical record that supports her claim that her medications render her excessively drowsy. The only evidence of record with respect to her drowsiness is claimant's own testimony and her random statements to some reviewers. The ALJ found claimant's testimony not fully credible.

The court finds that the ALJ considered the evidence and incorporated into her hypothetical questions those limitations that she found credible as well as those she found were not credible. The Court finds that the medical evidence supports a finding that the hypothetical questions posed to the vocational expert and ultimately relied upon by the ALJ accurately portrayed the limitations the ALJ found credible. Mcilroy v. Commissioner of Social Security, 2002 WL 1809089 (6th Cir. 2002) (unpublished); Varley v. Secretary of Health and Human Services, 820 F.2d 777, 779 (6th Cir. 1987).

Claimant also argues that the ALJ violated SSR 00-4p when it relied on the VE's opinion that the claimant could perform the job of office clerk because the Dictionary of Occupational Titles (DOT) listed this job as light and the ALJ found the claimant had

15

only a RFC for sedentary work. The court finds that although the ALJ did not comply with SSR 00-4p in determining the reason that the VE's testimony and the DOT differed on the level of exertion required to perform the job of office clerk, the error was harmless. Specifically, after the ALJ determined that the claimant could perform her past relevant work as a medical receptionist, the ALJ was not required to perform step five of the sequential evaluation. 20 C.F.R. § 404.1520(a)(4)(iv) ("If we can find that you are disabled or not disabled at a step, we make our determination or decision and we need not go on to the next step. . . . If you can still do your past relevant work, we will find that you are not disabled").

The claimant further asserts that the ALJ erred in finding she could do her past relevant work as a medical receptionist because her reading and language skills and her concentration and memory levels are insufficient for her to perform the essential elements of the job. The claimant also argues that her panic attacks preclude her from working with the public and, therefore, preclude her from performing the job of a medical receptionist. These arguments lack merit.

First, the court notes that the claimant cites to a page in the record that does not support her contentions that the she has limited reading and language skills. To the contrary, the evidence establishes that the claimant has a high school education and is not restricted in mental status other than mild problems with concentration and short-term memory. (TR 169-71).

Second, the court finds that the VE considered claimant's limitations in her ability to work with the public in reaching her decision that the claimant could perform her past relevant work. The ALJ specifically instructed the VE to consider the mental limitations contained in exhibit 8F, Dr. Brake's consulting psychological assessment. This assessment took into consideration claimant's mental limitations, including her moderate limitation in working with the general public. Despite this limitation, the VE opined that the claimant could perform her past relevant work as a medical receptionist.

The claimant has the burden of showing that she can no longer perform her past relevant work. See Bowen v. Yuckert, 482 U.S. 137, 146-47 n. 5 (1987). The VE's testimony that a person with claimant's limitations can perform her past relevant work provides substantial support for the ALJ's similar finding. Delgado v. Commissioner of Social Security, 30 Fed. Appx. 542, 2002 WL 343402 (6th Cir. 2002).

The court finds that the ALJ's finding that the claimant can perform her past relevant work as a medical receptionist is supported by substantial evidence. Accordingly, the claimant is not disabled and the fact the Commissioner may not have carried her burden at step 5 of the sequential process is irrelevant. See Carmack v. Barnhart, 2005 WL 2108329, No. 04-6152 (6th Cir. 2005).

The court holds that the findings of the ALJ are supported by substantial evidence. Accordingly, the claimant is not

disabled within the meaning of The Social Security Act and the ALJ's decision is affirmed.

Therefore, the court being advised,

**IT IS ORDERED** that the motion for summary judgment of the plaintiff (Doc. 7) be, and it hereby is, **denied** and the cross motion for summary judgment of the defendant (Doc. 8) be, and it hereby is, **granted**. That this matter be, and it is, hereby dismissed and stricken from the docket of this court.

This 21st day of November, 2005.

*William O. Bertelsman*

**WILLIAM O. BERTELSMAN, JUDGE**